1     

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   Mary-Ellen Hardin,                    CASE NO. SACV 11-1785-JST (ANx)

12            Plaintiff,
                                           **ORDER (1) GRANTING IN PART**
13                                          **AND DENYING IN PART**
                                           **DEFENDANT'S MOTION FOR**
14        vs.                              **SUMMARY JUDGMENT (Doc. 25);**
                                           **and (2) GRANTING IN PART AND**
15   Greenwich Insurance Company,          **DENYING IN PART PLAINTIFF'S**
                                           **MOTION FOR PARTIAL SUMMARY**
16            Defendant.                   **JUDGMENT (Doc. 26)**

17

18

19

20

21

22

23

24

25

26

27

28

Before the Court are cross-motions for summary judgment filed by Plaintiff Mary-Ellen Hardin ("Hardin") and Defendant Greenwich Insurance Company ("Greenwich"). (Hardin's Motion for Partial Summary Judgment ("Hardin MPSJ," Doc. 26); Greenwich's Motion for Summary Judgment ("Greenwich MSJ," Doc. 25).)  Each party seeks summary judgment in its favor regarding Greenwich's duty to defend Hardin in an underlying state court action.  Having considered the briefing and supporting documentation submitted by the parties, having heard oral argument, and having taken the matters under submission, the Court GRANTS in part and DENIES in part Greenwich's Motion for Summary Judgment, and GRANTS in part and DENIES in part Hardin's Motion for Partial Summary Judgment.

## I.   BACKGROUND

Hardin is the co-founder of Community Dental Services, Inc. ("CDS"), a subsidiary of Dental Technology, Inc. ("DTI") that operates dental clinics throughout the State of California.  (Greenwich's Statement of Genuine Issues in Opp'n to Pl.'s Mot. for Summ. J. ("Greenwich SGI") ¶¶ 1-3, Doc. 28-1.)  Hardin served as the President and CEO of CDS from 1997 to April 2005, as a member of CDS's Board of Directors from 1997 to August 2011, and as Chairman of CDS's Board of Directors from 1997 to 2007.  (*Id.* ¶¶ 4-6.)

Greenwich is an insurance company that provides corporate liability insurance to DTI and its subsidiaries, including CDS.  At issue in this action is the scope of coverage Greenwich owes to Hardin pursuant to the Private Company Reimbursement Policy in effect between Greenwich and DTI from December 1, 2008 through December 1, 2009 (the "Policy").  (*Id.* ¶ 7; Hardin's Statement of Genuine Issues ("Hardin SGI") ¶ 1, Doc. 29-2.)  The Policy requires Greenwich "to defend any Claim against any Insured covered under [the] Policy . . . ."  (Ward Decl., Ex. 1 at 29, Doc. 25-4.)  A "Claim" includes, *inter alia*, "any civil proceeding in a court of law or equity," and provides that "[a]ll Claims arising from Interrelated Wrongful Acts [—i.e., Wrongful Acts based upon or arising from the same or related facts, transactions, or events—] shall be deemed to constitute a single

2

1  Claim . . . ." (*Id.* at 29-30, 32.)  The Policy also contains an allocation provision, which
2  provides:

3          If both Loss covered by this Policy and loss not covered by this Policy are
4              incurred, either because a Claim made against the Insured contains both
5              covered and uncovered matters, or because a Claim is made against both the
6              Insured and others not insured under this Policy, the Insured and the insurer
7              will use their best efforts to determine a fair and appropriate allocation of
8              Loss between that portion of Loss that is covered under this Policy and that
9              portion of Loss that is not covered under this Policy.

10  (*Id.* at 31.)

11          Greenwich's obligations under the Policy are set forth in two coverage parts:  a
12  Management Liability and Company Reimbursement Coverage Part (the "D&O
13  Coverage"), and an Employment Practices Liability Part (the "EPL Coverage").  (Hardin
14  SGI ¶ 2.)  The D&O Coverage requires Greenwich to "pay on behalf of the Insured
15  Persons Loss resulting from a Claim first made against the Insured Persons during the
16  Policy Period . . . for a Wrongful Act . . . ."  (Ward Decl. Ex. 1 at 36.)  "Insured Persons"
17  include DTI and its subsidiaries, as well as "any past, present or future director or officer,
18  or member of the Board of Managers" of DTI or its subsidiaries.  (*Id.*; Hardin SGI ¶¶ 4-6.)
19  A "Wrongful Act" includes, "with respect to any Insured Person of the Company, any
20  actual or alleged act, error, omission, misstatement, misleading statement or breach of duty
21  but solely by reason of his or her status as such."  (Ward Decl., Ex. 1 at 37.)

22          The D&O Coverage also contains several coverage exclusions.  Pertinent to this
23  action is the "Insured v. Insured Exclusion," which exempts from coverage any losses or
24  defense costs in "connection with any Claim made against an Insured . . . brought by, or on
25  behalf of, or at the direction of any Insured . . . ."  (*Id.* at 37-38.)

26          The EPL Coverage requires Greenwich to "pay on behalf of the Insureds Loss
27  resulting from a Claim first made . . . during the Policy Period . . . for a Wrongful Act."
28  (*Id.* at 40.)  An "Insured" under the EPL Coverage includes DTI and its subsidiaries, as

well as "any past, present or future director, officer or employee of [DTI or its subsidiaries] including any part-time, seasonal, or temporary employee." (*Id*. at 29, 40.)  A "Wrongful Act" includes:

> (1) wrongful termination of employment whether actual or constructive;
>
> (2) employment discrimination of any kind . . .;
>
> (3) unwelcome sexual advances, requests for sexual favors, or other verbal, visual or physical conduct . . . or other harassment in the workplace;
>
> (4) wrongful deprivation of career opportunity, negligent supervision, failure to grant tenure, employment related misrepresentations, retaliatory treatment against an employee of [DTI or its subsidiaries], failure to promote, demotion, wrongful discipline or evaluation, or negligent refusal to hire; [or]
>
> (5) employment related libel, slander, humiliation, defamation, or invasion of privacy . . . .

(*Id*. at 41.)  The EPL Coverage does not contain an Insured v. Insured Exclusion.

On March 10, 2009, Hardin filed a complaint against CDS in Orange County Superior Court, alleging that CDS failed to pay her compensation owed pursuant to an April 1, 2005, Deferred Compensation Letter and Chairman Agreement (the "Underlying Action").  (Hardin SGI ¶¶ 17, 20-23.)  On August 3, 2009, CDS filed an Amended Cross-Complaint against Hardin in the Underlying Action (the "CDS Cross-Complaint").  (*Id*. ¶ 29; Ward Decl., Ex. 4.)

The CDS Cross-Complaint alleges that, in 1997, Hardin, CDS, and certain other entities entered into a Recapitalization Agreement pursuant to which Hardin sold her family trust's majority interest in CDS for $40 million.  (Ward Decl., Ex. 4 ¶ 1.)  As partial consideration for the payment, the Recapitalization Agreement contained a non-compete clause pursuant to which Hardin agreed not to participate in, or finance competing dental companies for a specified period of time.  (*Id.* ¶ 35.)  It also contained a non-solicitation clause pursuant to which Hardin agreed not to solicit or hire CDS employees for a certain period of time, or to induce customers or business relations to stop doing business with

CDS.  (*Id.* ¶ 45.)  The CDS Cross-Complaint alleges that Hardin violated the non-compete and non-solicitation clauses by forming and participating in various competing businesses, and soliciting CDS employees, customers, clients, and vendors for the benefit of those businesses.  (*Id.* ¶¶ 20-30; 32-51.)  It further alleges that Hardin breached her fiduciary duties of loyalty, candor, and care as an officer and board member of CDS by participating in competing businesses, failing to disclose her participation in such businesses, soliciting employees, loaning to herself CDS funds without approval, misusing corporate funds, and submitting false claims to Denti-Cal.  (*Id.* ¶¶ 52-71.)

On September 8, 2009, Hardin filed a cross-complaint in the Underlying Action against CDS, DTI, and certain additional entities including Liberty Partners Holdings 14, LLC ("LPH")—a shareholder of CDS and unitholder in CDS's parent company.  (Hardin SGI ¶ 44; Ward Decl., Ex. 8.)  On January 29, 2010, LPH filed a Cross-Complaint against Hardin and her husband (the "LPH Cross-Complaint").  (Hardin SGI ¶ 48; Ward Decl., Ex. 6.)

The LPH Cross-Complaint alleges that, beginning in 1995, and continuing through 2005, Hardin engaged in a fraudulent billing scheme as an officer and board member of CDS that caused CDS employees to submit false billing claims to the State of California to induce payments for services provided by unlicensed practitioners.  (Ward Decl., Ex. 6 ¶ 15(a).)  It further alleges that Hardin breached her fiduciary duties to CDS and its shareholders, including LPH, by failing to disclose the fraudulent billing scheme, and that Hardin fraudulently induced LPH through false representations and warranties regarding CDS's financial position and regulatory compliance to enter into various agreements, including:  (i) the above-mentioned Recapitalization Agreement, (ii) a Chairman Agreement, (iii) an Executive Compensation Agreement providing Hardin deferred compensation for her work at CDS, (iv) a Contribution Agreement increasing Hardin's shares in CDS's holding companies, and (v) a Unitholder's Agreement regarding the composition of the board of CDS's holding company.  (*Id.* ¶¶ 15(b)-(c), 17(a)-(d), 18(a)-(d), 25(a)-(e), 26-32, 36-37.)  The LPH Cross-Complaint also asserts that Hardin engaged

in promissory fraud by entering into the Recapitalization Agreement despite her intent not to comply with the non-compete and non-solicitation clauses.  (*Id.* ¶¶ 33-35.)

On December 16, 2009, Hardin tendered her defense of the CDS Cross-Complaint to Greenwich under the Policy.  (Hardin SGI ¶ 45.)  On January 29, 2010, and February 1, 2010, Hardin tendered her defense of the LPH Cross-Complaint to Greenwich.  (*Id.* ¶ 63.) Greenwich denied coverage for both Cross-Complaints.  (*Id.* ¶¶ 46-47, 66.)

On November 18, 2011, Hardin filed this action against Greenwich, asserting three claims arising out of its denial of coverage for the CDS and LPH Cross-Complaints. (Compl., Doc. 1.)  On April 25, 2012, Hardin filed a First Amended Complaint ("FAC"), which is the operative complaint in this action.  The FAC asserts two claims:  (1) breach of the duty to defend Hardin in the CDS and LPH Cross-Complaints; and (2) breach of the covenant of good faith and fair dealing.  (FAC ¶¶ 20-28, Doc. 23.)  Hardin now seeks partial summary judgment as to her First Claim for breach of the duty to defend. Greenwich seeks summary judgment as to each Claim on the basis that it had no duty to defend Hardin against the CDS or LPH Cross-Complaints under the Policy.

## II.   LEGAL STANDARD

### A. MOTION FOR SUMMARY JUDGMENT

In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Summary judgment is proper "if the [moving party] shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law.  *Anderson*, 477 U.S. at 248.

1   The moving party bears the initial burden of demonstrating the absence of a genuine

2   issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "When the party

3   moving for summary judgment would bear the burden of proof at trial, it must come

4   forward with evidence which would entitle it to a directed verdict if the evidence went

5   uncontroverted at trial."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d

6   474, 480 (9th Cir. 2000) (citation and quotation marks omitted).  The burden then shifts to

7   the non-moving party to "cit[e] to particular parts of materials in the record" supporting its

8   assertion that a fact is "genuinely disputed."  Fed. R. Civ. P. 56(c)(1); *see also In re Oracle*

9   *Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) ("non-moving party must come forth

10  with evidence from which a jury could reasonably render a verdict in the non-moving

11  party's favor").

12

13  **B.  INSURANCE COVERAGE UNDER CALIFORNIA LAW**

14  California law governs an insurance policy dispute brought in a diversity action.

15  *Hyundai Motor Am. v. Nat'l Union Fire Ins. Co.*, 600 F.3d 1092, 1097 (9th Cir. 2010).

16  Under California law, an insurer "owes a broad duty to defend its insured" against

17  any suit "which *potentially* seeks damages within the coverage of the policy."  *Ortega*

18  *Rock Quarry v. Golden Eagle Ins. Corp.*, 141 Cal. App. 4th 969, 977 (2006) (citations and

19  internal quotation marks omitted).  "To prevail, the insured must prove the existence of *a*

20  *potential for coverage*, while the insurer must establish *the absence of any such potential*.

21  In other words, the insured need only show that the underlying claim *may* fall within

22  policy coverage; the insurer must prove it *cannot*."  *Montrose Chem. Corp. v. Superior*

23  *Court*, 6 Cal. 4th 287, 300 (1993).  "[W]hen the evidence adduced in the declaratory relief

24  action does not permit the court to eliminate the possibility that the insured's conduct falls

25  within the coverage of the policy, the duty to defend is then *established*, absent additional

26  evidence bearing on the issue."  *Id*. at 301.  The duty to defend is determined by "the facts

27  alleged in the complaint" and "facts known to the insurance company at the time of the

28  coverage decision."  *Griffin Dewatering Corp. v. N. Ins. Co. of N.Y.*, 176 Cal. App. 4th

1   172, 197-98 (2009).  "Any doubt as to whether the facts give rise to a duty to defend is

2   resolved in the insured's favor."  *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076,

3   1081 (1993).

4        Insurance policies are "contracts to which the ordinary rules of contractual

5   interpretation apply."  *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999).

6   Therefore, "the mutual intention of the parties at the time the contract is formed governs

7   interpretation."  *Id.*  The court infers the parties' intent, "[i]f possible . . . solely from the

8   written provisions of the insurance policy.'"  *Id.* (quoting *AIU Ins. Co. v. Superior Court*,

9   51 Cal. 3d 807, 822 (1990)).  In so doing, the court considers a policy's terms in context

10  and "interpret[s] words . . . in accordance with their ordinary and popular sense, unless the

11  words are used in a technical sense or a special meaning is given to them by usage."

12  *Westrec Marina Mgmt., Inc. v. Arrowood Indem. Co.*, 163 Cal. App. 4th 1387, 1392

13  (2008); *see also Palmer*, 21 Cal. 4th at 1115.  "If contractual language is clear and explicit

14  and does not involve an absurdity, the plain meaning governs."  *Westrec*, 163 Cal. App.

15  4th at 1392.

16       "[I]f a policy provision is capable of two or more reasonable constructions, it is

17  ambiguous, and courts must resolve the ambiguity in favor of the insured, consistent with

18  the insured's reasonable expectations."  *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*,

19  555 F.3d 772, 777 (9th Cir. 2009) (internal quotation marks and citations omitted).

20  However, the court engages in this exercise only "[i]f an asserted ambiguity is not

21  eliminated by the language and context of the policy . . . ."  *Foster-Gardner, Inc. v. Nat'l

22  Union Fire Ins. Co.*, 18 Cal. 4th 857, 868 (1998) (citing *La Jolla Beach & Tennis Club,

23  Inc. v. Indus. Indem. Co.*, 9 Cal. 4th 27, 37 (1994)).

24       "Moreover, insurance coverage is interpreted broadly so as to afford the greatest

25  possible protection to the insured, whereas exclusionary clauses are interpreted against the

26  insurer."  *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003) (citation and

27  internal quotations marks omitted).  "An insurer cannot escape its basic duty to insure by

28  means of an exclusionary clause that is unclear . . . . [A]ny exception to the performance of

1 the basic underlying obligation must be so stated as clearly to apprise the insured of its

2 effect." *Id.*

3       At the summary judgment stage, "[o]nce a *prima facie* showing is made [by the

4 insured] that the underlying action fell within coverage provisions, an insurer may defeat a

5 motion for summary judgment on the duty to defend only by producing undisputed

6 extrinsic evidence conclusively eliminating the potential for coverage under the policy."

7 *Anthem Elecs., Inc. v. Pac. Emp'r Ins. Co.*, 302 F.3d 1049, 1060 (9th Cir. 2002) (citation

8 omitted).  "Evidence that merely place[s] in dispute whether [the insured's] action would

9 eventually be determined . . . to fall within one or more of the exclusions contained in the

10 polic[y] is insufficient to defeat the insured's right to summary judgment." *Id.* (citations

11 omitted).

12

13 **III.   DISCUSSION**

14       Both Hardin and Greenwich seek summary judgment regarding Greenwich's duty

15 to defend Hardin as to the CDS Cross-Complaint and the LPH Cross-Complaint.  The

16 parties agree that the resolution of that question turns upon whether the claims raised in

17 each Cross-Complaint fall within or without the coverage provided under the Policy's

18 D&O Coverage or EPL Coverage.  The Court considers each in turn.

19

20         **A. DUTY TO DEFEND THE CDS CROSS-COMPLAINT**

21       Hardin concedes that the Insured v. Insured Exclusion bars coverage for the CDS

22 Cross-Complaint under the Policy's D&O Coverage.  (Hardin MPSJ at 2.)  She contends,

23 however, that Greenwich had a duty to defend her under the EPL Coverage because the

24 claims in CDS's Cross-Complaint pertain to "employment related misrepresentations,"

25 which are covered under the definition of Wrongful Acts in the EPL Coverage section of

26 the Policy.  (*Id.*)  The Court disagrees.

27       The EPL Coverage does not define the term "employment related

28 misrepresentations."  Hardin asserts that the term should be read broadly to apply to any

1    actual fraud or fraudulent deceit related in any way to Hardin's employment.  (Hardin

2    Opp'n at 22-23, Doc. 29.)  Such a definition is overly broad, however, because it is

3    inconsistent with the context of the EPL Coverage, and because it disregards the placement

4    of "employment related misrepresentations" in the definition of covered Wrongful Acts.

5    *See Sony Computer Entm't Am., Inc. v. Am. Home Assurance Co.*, 532 F.3d 1007, 1013

6    (9th Cir. 2008) (rejecting a proposed definition of a term in an insurance policy that that

7    was inconsistent with the context of the policy as a whole).

8         As set forth above, the definition of Wrongful Act under the EPL Coverage includes

9    several employment-based torts among which "employment related misrepresentations" is

10   listed.  The first section of the definition refers to wrongful termination, the second to

11   employment discrimination, the third to workplace sexual harassment, the fourth to various

12   workplace torts based upon employment decisions and supervision, the fifth to

13   employment-related slander and invasion of privacy, and the sixth to the failure to provide

14   or enforce employment procedures related to the enumerated categories of workplace torts.

15   "Employment related misrepresentations" appears in the fourth section along with

16   "wrongful deprivation of career opportunities, negligent supervision, failure to grant

17   tenure, . . . retaliatory treatment, failure to promote, demotion, wrongful discipline or

18   evaluation, or negligent . . . refusal to hire."  Each category pertains to a supervisory act

19   taken in regard to an employee's current or future job status or to job-related discipline.

20   The placement of "employment related misrepresentations" within that section "suggests

21   that the term refers to a narrow tort relating to [employment actions taken in an insured's

22   supervisory capacity for CDS], not a broad tort distinct from those terms."  *Id*.  Hardin's

23   construction of the term as encompassing any misrepresentation made by an insured in the

24   scope of his or her employment is completely divorced from the definition of Wrongful

25   Acts under the EPL Coverage and ignores the maxim that a policy's terms are construed in

26   context.  *Westrec*, 163 Cal. App. 4th at 1392.

27        The CDS Cross-Complaint asserts claims against Hardin arising from alleged

28   misrepresentations related to her participation in competing businesses in violation of the

10

terms of the Recapitalization Agreement and her submission of false claims to Denti-Cal. Neither of these alleged misrepresentations, nor any other wrongdoing alleged in the CDS Cross-Complaint, pertains to Hardin's role as an employee supervisor at CDS, to any decision regarding an employee's employment status, or to any action taken by Hardin in regard to employee discipline. Accordingly, it does not potentially seek damages within the EPL Coverage and Greenwich owed Hardin no duty to defend as to the CDS Cross-Complaint.

For the foregoing reasons, Greenwich's Motion for Summary Judgment is GRANTED as to Hardin's First Claim for breach of the duty to defend the CDS Cross-Complaint. Because an insured may not hold an insurer liable for breach of the implied covenant of good faith and fair dealing where there is no coverage under the insurance policy, *Waller v. Truck Ins. Exch. Co.*, 11 Cal. 4th 1, 37 (1995), Greenwich's Motion is also GRANTED as to Hardin's Second Claim as it pertains to the CDS Cross-Complaint. Hardin's Motion for Partial Summary Judgment is DENIED as to the CDS Cross-Complaint.

**B. DUTY TO DEFEND THE LPH CROSS-COMPLAINT**

Hardin asserts that Greenwich owed her a duty to defend the LPH Cross-Complaint under both the EPL Coverage and the D&O Coverage. Greenwich denies that it has a duty under either section of the Policy.

### i. *The EPL Coverage*

Hardin's contention that the LPH Cross-Complaint is covered under the EPL Coverage fails for the same reason as her argument that the CDS Cross-Complaint is covered under that section—none of the allegations set forth in the LPH Cross-Complaint pertain to Hardin's role as an employee supervisor at CDS, to any decision regarding an employee's employment status, or to any action taken by Hardin in regard to employee discipline. Accordingly, the LPH Cross-Complaint does not potentially seek damages within the EPL Coverage. Greenwich's Motion for Summary Judgment is GRANTED as

1   to its duty to defend the LPH Cross-Complaint under the EPL Coverage, and its liability

2   for breach of the covenant of good faith and fair dealing related to its failure to defend

3   Hardin thereunder.  Hardin's Motion for Partial Summary Judgment is DENIED as to

4   those claims.

5          ii.     ***The D&O Coverage***

6          Greenwich sets forth two reasons as to why it has no duty to defend Hardin against

7   the LPH Cross-Complaint under the D&O Coverage:  (1) the LPH Cross-Complaint does

8   not fall within the coverage terms of the D&O Policy, and (2) the LPH Cross-Complaint

9   falls within the Insured v. Insured Exclusion.

10          First, Greenwich asserts that the allegations in the LPH Cross-Complaint fall

11   outside the definition of Wrongful Acts under the D&O Coverage because they do not

12   pertain solely to Hardin's status as a director or officer of CDS.  In so doing, Greenwich

13   misconstrues the language of the Policy and the allegations in the LPH Cross-Complaint.

14          As set forth above, the D&O Coverage limited Greenwich's coverage obligations to

15   Claims for a Wrongful Act, which was defined to include "any actual or alleged act, error,

16   omission, misstatement, misleading statement or breach of duty" by an officer or board

17   member of CDS, "but solely by reason of his or her status as such."  (Ward Decl., Ex. 1 at

18   37.)  The "solely" clause modifies the type of alleged misconduct that qualifies as a

19   Wrongful Act under the Policy.  Therefore, that clause limits coverage to alleged

20   wrongdoing committed by an officer or board member—i.e., Hardin—in her capacity as an

21   officer or board member of CDS.  *See Am. Med. Int'l, Inc. v. Nat'l Union Fire Ins. Co. of*

22   *Pittsburgh*, 244 F.3d 715, 722 (9th Cir. 2001) (concluding that analogous definition of

23   "wrongful act" "did not cover [director's] actions outside the scope of his directorial

24   capacity").

25          The wrongdoing alleged in the LPH Cross-Complaint is expressly premised upon

26   Hardin's breach of her fiduciary duties as an officer and board member of CDS based upon

27   her facilitation of, and failure to disclose, a fraudulent billing scheme and her utilization of

28   fraudulent financial reports.  (Ward Decl., Ex. 6 ¶¶ 14, 15(a)-(c).)  LPH's first and second

claims for civil liability under the RICO statute are based entirely on Hardin's involvement in the fraudulent billing scheme.  (*See id.* ¶¶ 44-56.)  Likewise, LPH's fourth and fifth claims for breach of contract are based upon Hardin's role in the fraudulent billing scheme and her failure to disclose the false financial reports.  (*See id.* ¶¶ 64, 71.)  Accordingly, the facts set forth in the LPH Cross-Complaint establish the existence of a potential for coverage under the D&O Coverage, and give rise to a duty to defend.

The fact that LPH's third claim for misrepresentation and her breach of contract claims are also premised on wrongdoing committed by Hardin in her capacity as an owner of CDS does not, as Greenwich argues, require a different result.  Any such argument is foreclosed by the Policy's express allocation provision, which explicitly contemplates allocated coverage when "a Claim made against the Insured contains both covered and uncovered matters . . . ."  (Ward Decl., Ex. 1 at 31.)

Second, Greenwich asserts that coverage for the LPH Cross-Complaint is barred by the Insured v. Insured Exclusion either (i) because the LPH Cross-Complaint and the Underlying Action constitute a single "Claim" brought by an insured—Hardin—against an insured—CDS, or (ii) because the LPH Cross-Complaint is brought at the direction of insured officers of CDS.

As to its first basis for application of the Insured v. Insured Exclusion, Greenwich asserts that each pleading filed in the Underlying Action forms part of one Claim as a matter of procedural law or under the Policy's Interrelated Wrongful Acts provision.  (Greenwich Opp'n at 5-6, Doc. 28; Greenwich Reply at 2-4, Doc. 31.)  Because the Underlying Action was brought by Hardin against CDS, Greenwich concludes that the Insured v. Insured Exclusion precludes coverage.  Hardin contends that each pleading filed in the Underlying Action constitutes a separate action and, therefore, the LPH Cross-Complaint falls outside the Insured v. Insured Exclusion because LPH is not an insured under the Policy.  (Hardin Reply at 2, Doc. 32.)

The Court need not resolve the parties' dispute as to whether the Underlying Action and LPH Cross-Complaint are one Claim for purposes of the Policy because the Policy's

1  allocation provision contemplates that a single Claim may contain both covered and

2  uncovered matters that require loss allocation.  Therefore, regardless of whether the LPH

3  Cross-Complaint is a separate Claim, or a separate matter under one Claim, it is brought by

4  uninsured Plaintiffs and triggers the duty to defend as to that portion of the action.

5      In so ruling, the Court finds persuasive the analysis set forth by the Seventh Circuit

6  in *Level 3 Commc'ns, Inc. v. Fed. Ins. Co.*, 168 F.3d 956 (7th Cir. 1999).  In *Level 3*, the

7  Seventh Circuit considered whether an insured v. insured exclusion that precluded

8  coverage "of any 'Claim made against an Insured person' if the Claim is 'brought or

9  maintained by or on behalf of any Insured'" barred coverage for a suit brought by

10  uninsured plaintiffs after one insured plaintiff joined the action.  *Id*. at 957-58.  In holding

11  that the exclusion exempted coverage for the insured plaintiff, but not for the uninsured

12  plaintiffs, the court explained:

13      The presence of an Insured in the litigation could conceivably contaminate

14      the entire litigation . . . [but] the contract deals with this problem in another

15      way, by requiring allocation of covered and uncovered losses.

16      . . . .

17      [T]he allocation provision automatically takes care of the case in which an

18      Insured Person is the primary suitor; for in that case the bulk of the judgment

19      or settlement will be allocated to his part of the suit and the insurance

20      company's exposure will be correspondingly reduced.

21  *Id*. at 960-61.  Here, as in *Level 3*, the Policy deals with the problem of suits brought

22  jointly by insured and uninsured plaintiffs through the inclusion of an allocation provision.

23  And, as in *Level 3*, the LPH Cross-Complaint is, therefore, not exempted from coverage by

24  the Insured v. Insured Exclusion.  *See also*, *Chartrand v. Ill. Union Ins. Co.*, No. C 08-

25  05805 JSW, 2009 WL 2776484, at *5 (N.D. Cal. Aug. 28, 2009) ("the Insured v. Insured

26  Exclusion [did not] preclude coverage for all underlying suits where instituted by both

27  insured and non-insured claimants where the court can allocate the costs of defense");

28  *Megavail v. Ill. Union Ins. Co*, Civil No. 05-1374-AS, 2006 WL 2045862, at *3 (D. Or.

1    July 19, 2006) ("if the exclusionary clause is applicable, the allocation clause establishes

2    the method for addressing claims involving both insured and uninsured plaintiffs").

3        As to its second basis for exclusion, Greenwich asserts that the LPH Cross-

4    Complaint is covered by the Insured v. Insured Exclusion because it was brought "by, on

5    behalf of, or at the direction of" insureds under the D&O Coverage.  Specifically, it

6    contends that the Cross-Complaint was brought at the direction of Michael Stakais,

7    Michael Levine, Paul Huston, and/or Yvonne Marsh, who were officers of both LPH and

8    CDS at the time the LPH Cross-Complaint was filed.  While the parties do not dispute the

9    fact that Stakais, Levine, Huston, and Marsh were officers and directors of both entities,

10   Greenwich's motion stops short of presenting uncontroverted facts that those individuals

11   directed the filing of the LPH Cross-Complaint.

12       Accordingly, because Hardin has established a potential for coverage under the

13   D&O Coverage, and Greenwich has failed to set forth evidence conclusively eliminating

14   the potential for coverage under that section, the Court finds that Greenwich had a duty to

15   defend the LPH Cross-Complaint under the D&O Coverage.  *See Anthem Elecs., Inc.*, 302

16   F.3d at 1060; *Montrose Chem. Co.*, 6 Cal. 4th at 300-01.  Hardin's Motion for Partial

17   Summary Judgment is GRANTED as to Greenwich's duty to defend her against the LPH

18   Cross-Complaint under the D&O Coverage.  Greenwich's Motion is DENIED as to that

19   claim and as to Hardin's claim for breach of the implied covenant of good faith and fair

20   dealing insofar as it pertains to Greenwich's failure to defend Hardin against the LPH

21   Cross-Complaint under the D&O Coverage.

22

23

24

25

26

27

28

1  **IV.    CONCLUSION**

2           For the foregoing reasons, the Court GRANTS in part and DENIES in part

3   Greenwich's Motion for Summary Judgment and GRANTS in part and DENIES in part

4   Hardin's Motion for Partial Summary Judgment as set forth above.

5

6   DATED:  August 3, 2012

7                                                       _____

8                                                       UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28